IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL S.,[1]                                          No. 3:20-cv-1876-MO

     Plaintiff,                          OPINION & ORDER

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

     Defendant.


MOSMAN, District Judge:

   This matter comes before me on Plaintiff Michael S.'s Complaint [ECF 1] against

Defendant Commissioner of the Social Security Administration. For the reasons given below, I

AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On November 7, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, with an alleged onset date of September 10, 2016. Tr. 13. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 121-25, 127-29. Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Jo Hoenninger on November 8, 2017. Tr. 55-85. The ALJ held a supplemental hearing on May 24, 2018 to hear testimony from Vocational Expert (VE) Richard Hincks. Tr. 34-54. On June 21, 2018, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the decision. Tr. 10-33. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6. Plaintiff then filed a civil action in this Court, and by stipulation of the parties the matter was remanded to the agency for a new hearing to reevaluate the Veterans Administration (VA) disability rating, and the claimant's maximum residual functional capacity. Tr. 741-52. On July 1, 2020, after a supplemental hearing, the ALJ issued a new decision finding Plaintiff not disabled. Tr. 669-90. After 60 days, the ALJ's decision became the final order of the agency, which Plaintiff now appeals.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 10, 2016, the alleged onset date. Tr. 674. At step two, the ALJ determined that Plaintiff had the following severe impairments: unspecified trauma-related disorder, traumatic brain injury (TBI), and depression. Tr. 674. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 676. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: He can understand and remember simple instructions;

has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek; should have no contact with the general public in the workplace; should be in a workplace with few changes to the work setting; should be allowed to work a regular and consistent work shift.

Tr. 677.

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a stacker and a lumbar [*sic*] stacker as actually and generally performed. Tr. 687. Alternatively, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as hospital housekeeper, landscape worker, and office cleaner. Tr. 689. The ALJ therefore found Plaintiff not disabled. Tr. 689.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises five issues with the ALJ's decision. He argues the ALJ erred by: (1) erroneously discounting his subjective symptom testimony, (2) improperly weighing the medical evidence, (3) erroneously discounting lay witness testimony, (4) improperly rejecting the disability rating decision issued by the Veterans Administration, and (5) failing to meet her burden in formulating the RFC and at step five. I address these issues in turn.

## I.     Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that he had been staying home with his children since he stopped working. Tr. 67. His last job was in a juvenile corrections facility and he stopped working because he was becoming forgetful and was often late to work. Tr. 70. Plaintiff had asked his employer to accommodate his disability by granting him a regular (as opposed to rotating) work schedule, but this was denied, so he had to resign. Tr. 71. Plaintiff has difficulty

focusing and feels that he cannot have normal conversations with others. Tr. 72. He is not good

at teamwork. Plaintiff tried several antidepressants before he left the military, but he did not like

the way they made him feel, so he stopped taking them. Tr. 73. Plaintiff has migraines 2 to 3

times each week. Tr. 75. He has pain in his left shoulder and has trouble sleeping. Tr. 77.

Plaintiff is paranoid around strangers and often has angry outbursts. Tr. 78. His parents and in

laws help him take care of his children. Tr. 79. He often needs reminders to complete basic tasks.

Tr. 80. Plaintiff is depressed and socially isolated. Tr. 81. He uses medical marijuana for his

anxiety and headaches. Tr. 82. At the second hearing on March 19, 2020, Plaintiff explained that

his mental health had not improved and his wife had been forced to stop working for a while so

she could help him at home. Tr. 701-02. Plaintiff described having lost significant weight. He

tried taking anti-depressants, but they did not alleviate his symptoms. Tr. 702.

      The ALJ found Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 678

However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and

limiting effects of his symptoms were not entirely consistent with the medical evidence and other

evidence in the record. Tr. 678. Specifically, the ALJ found Plaintiff's symptom allegations were

inconsistent with the objective medical evidence and Plaintiff's history of conservative

treatment, that Plaintiff's inconsistent statements undermined his allegations, and that Plaintiff's

daily activities conflict with the level of alleged disability in his testimony. Tr. 678-82.

      *A. Objective Medical Evidence*

      The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom

allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to

assist us in making reasonable conclusions about the intensity and persistence of your

symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The absence of corroborating objective medical evidence is not enough, on its own, however, to reject a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ reasonably relied on conflicting medical records to discount Plaintiff's subjective symptom testimony about his mental health symptoms. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified to significant anxiety and PTSD, leading to difficulty focusing and completing tasks. Tr. 71-72. Plaintiff further shared that he is paranoid around strangers and has angry outbursts. Tr. 78. The ALJ compared these allegations to Plaintiff's medical history, however, and found they did not match up. Tr. 679. The ALJ cited three separate medical appointments in August and November, 2016, where Plaintiff exhibited happy affect, and several other objective markers of positive mental health. Tr. 679 (citing Tr. 430, 437, 602). Nor did Plaintiff mention difficulty with memory, attention, concentration or executive function at those appointments, which belied his testimony about difficulty focusing or following through with tasks. Tr. 679. The ALJ also cited several other pieces of objective medical evidence that clashed with Plaintiff's allegations. For example, Plaintiff scored 30/30 on a Montreal Cognitive Assessment (MOCA), a screening instrument for cognitive dysfunction. Tr. 679 (citing Tr. 602). The ALJ acknowledged that Plaintiff shared

difficulties with memory with his doctors, but highlighted the medical professionals' objective findings that Plaintiff was able to provide detail about past and recent events on exam. Tr. 679-80. Treatment notes through February 2020 continued to reflect relatively good day-to-day functioning. Tr. 884. Based on these several inconsistencies with the record, the ALJ's decision to discount Plaintiff testimony about these symptoms was clear, convincing, and supported by substantial evidence in the record.

> B.    *Conservative Treatment*

The ALJ also found Plaintiff's symptom testimony was inconsistent with a history of conservative treatment, and his failure to follow treatment recommendations. Tr. 678-82. "[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted). Acceptable reasons for failing to follow prescribed treatment include the treatment being contrary to the claimant's religion, the fact that similar treatment has been tried in the past with unsuccessful results, the recommended treatment being of great magnitude or unusual nature, or that the treatment would involve amputation of an extremity. 20 C.F.R. §§ 404.1530, 416.930. Likewise, an ALJ may reject a claimant's testimony when the severity of symptoms alleged is inconsistent with the level or frequency of treatment. *See Molina*, 674 F.3d at 1113 (quoting Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996); *Burch v. Barnhart*, 400 F.3d 1111, 1114 (9th Cir. 2005).

The ALJ reasonably considered Plaintiff's conservative treatment when discounting his testimony about the extent of his mental health symptoms. To treat his depression during the relevant period, Plaintiff was prescribed numerous antidepressants, but would only try them for five or six weeks at a time. Tr. 16. Finally, on August 29, 2018 Plaintiff said he did not want to try any more medications, preferring to use only marijuana for treatment. Tr. 661, 1092. The ALJ noted that medical professionals "suggested to him he would have improvement with optimal management of medications and reduction in his marijuana and alcohol use; yet he chooses marijuana over medications." Tr. 675 (citing Tr. 447). The ALJ found his conservative treatment for headaches also undermined his testimony about their severity. Tr. 674. The ALJ emphasized that Plaintiff had never been to the ER or urgent care for headaches, and did not regularly treat them with medication despite their alleged severity. Tr. 675 (citing Tr. 571). Ultimately, the ALJ reasonably found Plaintiff's failure to give longer duration trials or trials of more mental health medications, and lack of significant treatment for his alleged migraines suggests his symptoms are not as severe as he claims.

*C. Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony about his mental health symptoms and migraines because it was inconsistent with his daily activities. Tr. 679. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video

games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). The ALJ found Plaintiff's ability to take care of his children, perform household chores, and work outdoors, contradicted his testimony of disabling mental health problems. Tr. 678.

The ALJ reasonably cited several activities that undermined Plaintiff's testimony about cognitive limitations associated with depression, PTSD, and migraines. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ focused mostly on Plaintiff's ability to take care of his children and perform household chores such as laundry, dishes, sweeping, mopping, vacuuming, scrubbing bathroom, and creating a small farm on his family property. Tr. 681(citing Tr. 412, 566, 570, 579, 588, 591, 594-96, 619, 625). The ALJ also highlighted Plaintiff's ability to attend community college and socialize. Tr. 681. Plaintiff had also shared that he had contact with good friends, attended church, and managed a family trip to Disneyland with no issues. Tr. 660, 953. This evidence supports the ALJ's conclusion that Plaintiff can manage himself, complete tasks, and interact appropriately with others in a work setting, and undermined Plaintiff's testimony about difficulty planning and working with others. This was another clear and convincing reason, supported by substantial evidence, for the ALJ to rely upon to discount Plaintiff's subjective symptom testimony.

### D. Inconsistent Statements

The ALJ also reasonably considered that Plaintiff's explanation for why he left work changed over time, undermining his allegations that he was unable to work due to his disability. The ALJ may use ordinary techniques of credibility evaluation, such as inconsistent statements, when evaluating a Plaintiff's hearing testimony. *See, e.g., Tonapetyan v. Halter,* 242 F.3d 1144,

1148 (9th Cir. 2001) (upholding analysis of subjective allegations where ALJ cited inconsistent statements). When Plaintiff left his job in 2016, he reported he could continue doing it if he had a regular schedule. Tr. 680 (citing Tr. 576). The ALJ concluded that despite his later statements about how mental health symptoms affected his decision to quit, this contemporaneous explanation for why he left work was more convincing. Moreover, he requested no accommodations regarding working with others and he admitted he did not have any problems with aggression or anger on the job, which suggests his alleged social functioning problems are not particularly limiting in performance of work activities. Tr. 576. The ALJ also noted that Plaintiff reported that if family finances were better, he could return to work, suggesting it was a financial, rather than disability-related reason that motivated Plaintiff to leave work to be a stay-at-home parent. Tr. 680 (citing Tr. 580). This was another clear and convincing reason, supported by substantial evidence, for the ALJ to rely upon to discount Plaintiff's hearing testimony about his disabling symptoms.

## II.    Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight she gave the opinions of medical professionals who saw the claimant or reviewed his records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims like this one filed before March 17, 2017, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester*, 81 F.3d at 830.

To reject a contradicted treating or examining doctor's opinion, the ALJ must present "specific, legitimate reasons" for doing so. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.

2014). When there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040. The opinion of a non-examining physician cannot by itself constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830-1 (9th Cir. 1995). Such opinions are substantial evidence only if they are consistent with other evidence in the record which contradicts the treating or examining medical opinion at issue. *Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted). To discount opinions from "other source[s]," such as therapists, ALJs must "give reasons that are germane to each witness." *Molina*, 674 F.3d at 1114.

    *A. Dr. Marc Stuckey*

    Dr. Marc Stuckey examined and tested Plaintiff on January 10, 2018. Dr. Stuckey noted Plaintiff reported hypervigilance when in public, especially when his children were with him. Tr. 660. Plaintiff had symptoms of depression and anxiety and often had violent nightmares. He had a traumatic brain injury after an IED detonated near him in Afghanistan. He had mood swings. Tr. 661. Dr. Stuckey's testing indicated Plaintiff had a full scale IQ score of 95, but his scores on the working memory tests were in the borderline range. Tr. 662. Dr. Stuckey opined Plaintiff's diagnoses included an unspecified neurocognitive disorder, major depressive disorder, and an unspecified trauma related disorder. Tr. 663. Dr. Stuckey opined Plaintiff would be markedly limited in his ability to understand, remember, and carry out complex instructions. He noted this

was due to the test results showing deficits in working memory and attention/concentration. Tr. 664. Dr. Stuckey opined Plaintiff would also be markedly limited in his ability to interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 665.

The ALJ gave Dr. Stuckey's opinions significant weight, as generally consistent with Plaintiff's evaluations and testing. The ALJ assigned little weight to Dr. Stuckey's assessment of marked limitations[2] regarding Plaintiff's ability to respond appropriately to usual work situations and to changes in routine, however, as he did not explain why there would be such marked difficulties in this area, and it was inconsistent with Plaintiff's ability to function as a stay-at-home parent, responsible for his children's wellbeing. Tr. 684.

The ALJ adequately supported his rejection of Dr. Stuckey's opinion about Plaintiff's ability to adjust to changes in routine with substantial evidence that the limitations in his opinion do not match up with other medical evidence or Plaintiff's activities of daily living. As noted above, conflict with other medical evidence and activities of daily living are sufficiently specific, legitimate reasons to discount an examining doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Montavono v. Berryhill*, 2018 WL 1069464, at *7 (D. Or. Feb. 26, 2018) (finding discrepancy between objective examination findings and doctor's conclusion a "clear and convincing reason" to discount the medical opinion). For example, the ALJ noted that Plaintiff's ability to shop, be in public alone, attend church, go to public outings (such as the movies and Disneyland), and take care of his children suggests he is more capable of interacting with the public than Dr. Stuckey suggested. Tr. 684. Furthermore, the ALJ cited

---

[2] A "marked" limitation is defined as "there is serious limitation in this area. There is a substantial loss in the ability to effectively function." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff's work as a stay-at-home parent as evidence that he could cope with changes in the workplace. Tr. 680 (citing Tr. 684). Lastly, the ALJ relied upon the reviewing physicians' medical opinions, which disagreed with Dr. Stuckey's, and found Plaintiff more capable of handling change in the workplace. Tr. 718. Plaintiff does not contest the weight the ALJ gave to these reviewing physicians' opinions. *See* Pl. Br., ECF No. 13. Taken together, these conflicting medical opinions and daily activities provide substantial evidence to support the ALJ's decision to discount Dr. Stuckey's opinion that Plaintiff was markedly limited in his ability to respond appropriately to usual work situations and to changes in routine.

Plaintiff takes issue with the ALJ's finding, arguing that the record weighs more heavily in favor of Dr. Stuckey's opinion about his marked limitation. Plaintiff argues the treatment record, his testimony, and lay witness testimony all support Dr. Stuckey's conclusion that Plaintiff was unable to work due to this marked limitation. Pl. Reply, ECF No. 15 at 4. But it is not this Court's job to reconsider how much weight each individual piece of medical evidence ought to have. Instead, the Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ"). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, he cannot establish error by simply advancing a different interpretation of the record. The ALJ supported her

decision to offer one narrow portion of Dr. Stuckey's opinion "little weight" with substantial evidence, and did not err.

### B. Licensed Clinical Social Worker Candis Sollars

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p, at *2.[3] Opinions from "not acceptable" sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, at *3. Factors the ALJ should consider when determining the weight to give an opinion from those non-acceptable medical sources include: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise. SSR 06-03p, at *4; 20 C.F.R. 404.1527(c)(2)-(6). On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source. SSR 06-03p, at *5-6. The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6. An ALJ can discount a "not acceptable" medical source's opinion if she "gives reasons germane to each witness for doing so." *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (internal citation omitted).

---

[3] The agency rescinded SSR 06-03p, but it still applies to claims (such as this one), filed before March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, 06-03p, *available at* 2017 WL 3928298.

LCSW Candis Sollars treated Plaintiff for post-traumatic stress disorder (PTSD) and a neurocognitive disorder related to his traumatic brain injury. Tr. 518. Starting in March, 2016 she began noting Plaintiff's difficulty with stress, and getting along with others at his job. Tr. 516. By July, 2016, Sollars noted Plaintiff had been getting to work late at times because his schedule was not consistent. Tr. 508.

On November 11, 2016, LCSW Sollars wrote a statement requesting that Plaintiff's job provide him with an accommodation of a regular schedule, as his PTSD had worsened over the past three months and the irregular schedule and night shifts were making his symptoms worse. LCSW Sollars noted that Plaintiff was easily agitated, had dissociative episodes, and had a poor memory. Tr. 536-39. Plaintiff's employer denied the request for accommodations. Tr. 545. On December 10, 2016, LCSW Sollars opined Plaintiff was not able to work, was unable to sustain concentration, and forgot appointments even with multiple reminders. Tr. 526.

From late 2016 through 2017, LCSW Sollars noted Plaintiff still did not want to take mental health medications because of the side effects he experienced when he had tried them in the past. Tr. 597. She noted Plaintiff continued to have cognitive issues, went off topic during therapy, and was difficult to redirect. Tr. 625. Throughout 2017, LCSW Sollars noted Plaintiff was sleeping poorly at night and lacked patience with his family. She opined Plaintiff still could not work as a result of his severe symptoms during that time. Tr. 612. On October 26, 2017, LCSW Sollars completed a statement in which she opined Plaintiff was not able to sustain concentration, persistence, and pace. Plaintiff was unable to apply information on a regular and continuing basis. Tr. 646. She opined Plaintiff was unable to avoid distractions or complete tasks in a timely manner. He could not sustain focus during conversations in therapy without going off on tangents having nothing to do with the topic at hand. She opined Plaintiff would not be able to

persist, maintain pace, interact with others, or adapt on a sustained basis in a work environment.
Tr. 647. LCSW Sollars opined Plaintiff could not adapt to change because he was easily
frustrated. He could not follow through with 1 to 3 step tasks she assigned for homework during
therapy. He could not stay on task for the duration of a therapy session without multiple breaks.
He could not sustain focus for longer than about 30 minutes. LCSW Sollars opined Plaintiff
would not be able to understand, remember, or carry out detailed but uninvolved instructions,
maintain attention for 2 hour segments, sustain an ordinary routine without special supervision,
or accept instructions or respond appropriately to criticism from supervisors. Tr. 648. She noted
Plaintiff often lost track of conversations mid-stream. She opined Plaintiff would likely miss 4 or
more days of work each month as a result of his conditions. Tr. 649.

The ALJ supported her decision to give LCSW Sollars' opinion little weight with several
germane reasons, backed up by substantial evidence. As noted above, "germane reasons" include
considerations like the medical provider's area of expertise, conflict with or lack of support from
the objective medical record, and conflict with Plaintiff's daily activities. *Britton*, 787 F.3d at
1013; SSR 06-03p, at *4; 20 C.F.R. 404.1527(c)(2)-(6). The ALJ principally cited LCSW
Sollars' lack of explanation for the severity of several of the limitations in her opinion. Tr. 686.
The ALJ also noted her opinions clashed with opinions from examining physician Dr. Stuckey, who
found Plaintiff had no limitation in understanding, remembering, and carrying out simple
instructions, and no impairment in making judgments on simple work-related decisions. Tr. 686. And
finally, the ALJ also discounted Sollars' opinion about the severity of Plaintiff's mental health
symptoms because it conflicted with his daily activities showing his ability to function as a stay-at-
home parent, responsible for his children's well-being. Tr. 686. The ALJ did not err in considering
LCSW Sollars' opinion because she provided three germane reasons, supported by substantial
evidence, when deciding to offer that opinion only "some" weight.

### III.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). The ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122

Plaintiff's wife completed a questionnaire describing Plaintiff's limitations. She noted Plaintiff is very forgetful, sensitive to noise, and easily frustrated with others because of his PTSD. Tr. 289. She noted Plaintiff cannot be relied on to care for himself or others. He does not shower or change clothes unless he is reminded. Tr. 290. Plaintiff is paranoid about taking medications. He will not eat unless he is reminded, and does not do well with crowds. Tr. 291. She noted Plaintiff does not deal well with stress or changes in routine. Tr. 295. In an updated

statement on 3/9/20, she noted Plaintiff's mental health had worsened. Plaintiff began having worsening forgetfulness and angry outbursts, and she had to take medical leave from her job so that she could be home to support Plaintiff and take care of their children. Tr. 839. She noted Plaintiff does not eat much and has lost significant weight. He needs her to attend his medical appointments because he will not be able to give his doctors an accurate history or remember their instructions. Plaintiff continues to be hypervigilant and paranoid about his family leaving the house. Tr. 840.

The ALJ provided specific, germane reasons to discount Plaintiff's wife's testimony. Inconsistency with medical evidence and activities of daily living are germane reasons for discrediting lay witness testimony. *Bayliss*, 427 F.3d at 1218. As she did with Plaintiff's similar testimony about his symptoms, the ALJ contrasted evidence of Plaintiff's significant daily activities of child care, chores, and farm work with Plaintiff's wife's testimony about debilitating mental health symptoms. As discussed in more detail above, this was a sufficient basis for the ALJ to discount Plaintiff's testimony. Because Plaintiff's wife's allegations were substantially like his own, the ALJ's reasons for rejecting the latter apply with equal force to the former. *Valentine v. Comm' r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). The ALJ therefore did not err, and gave specific germane reasons supported by substantial evidence for discounting Plaintiff's wife's lay witness statement.

## IV.    VA Disability Determination

Plaintiff also argues that the ALJ erred by only giving some weight to the VA's disability determination. "[A]n ALJ must ordinarily give great weight to a VA determination of disability" because there is a "marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).[4] "Because the VA and SSA criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he [or she] gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* Here, the VA assessed Plaintiff as 70 percent disabled for PTSD as of December 21, 2016; 30 percent for migraines; 0 percent for TBI. Tr. 353-58. The ALJ found this assessment inconsistent with the medical evidence and Plaintiff's activities of daily living. Tr. 682-84.

The ALJ provided persuasive, specific, and valid reasons for giving only "some weight" to the VA disability determination, and supported her decision to do so with substantial evidence. The ALJ specifically highlighted several inconsistencies between the VA rating, the medical record, and Plaintiff's daily activities. Tr. 683-84. For example, the VA rating noted that Plaintiff's PTSD was likely to improve, so was not considered a permanent limitation. Tr. 684. Furthermore, the ALJ cited significant record evidence showing Plaintiff's mental health was better than the VA suggested, such as his January 2019 MOCA test showing normal cognition, lack of hospitalization, and significant daily activities of child care and farm work. Tr. 683-84 (citing Tr. 1049). The ALJ also contrasted the VA rating decision's "laundry list" of limitations with the countervailing medical evidence such as Plaintiff's cooperative mood with appropriate

---

[4] Because Plaintiff filed his application before the March 27, 2017, effective date of the Social Security Administration's revised regulations regarding the evaluation of medical evidence, *McCartey* still applies. *See Kitchen v. Kijakazi,* 82 F.4th 732, 738 (9th Cir. 2023)(noting that the 2017 regulations supersede the requirement to provide persuasive, specific, valid reasons to deviate from a VA disability rating); 20 C.F.R. § 404.1520c (2017).

affect at evaluations and office visits, history of good but minimal contact with supervisors, and ability to get along with most coworkers and other parents at his children's school. Tr. 595-96, 661. All this evidence conflicted with the VA rating, and the ALJ reasonably considered it when giving the rating less weight and finding Plaintiff less than fully disabled.

## V.    RFC & Step Five

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "Because it is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, ... the RFC need not exactly match the opinion or findings of any particular medical source." *Mills v. Comm'r of Soc. Sec.*, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014).

At steps four and five in the sequential proceedings, the ALJ determines if the claimant can perform his past relevant work, or perform representative jobs that exist in the national economy. 20 C.F.R. § 404.1520(a)(4)(iv-v). In doing so, the ALJ may take administrative notice of the occupational data contained in the Dictionary of Occupational Titles (DOT), or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R, §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational

expert must include all properly supported limitations. *Osenhrock v. Apfel,* 240 F3d 1157, 1165 (9th Cir.2001).

As discussed above, the ALJ reasonably discounted Plaintiff's subjective symptom testimony, his wife's similar testimony, appropriately weighed medical evidence from Dr. Stuckey and LCSW Sollars, and gave due credit to a prior disability rating from the VA. The ALJ formulated an RFC that captured Plaintiff's functional limitations reflected by the weight given to this evidence, and reasonably found Plaintiff capable of performing past relevant work. Tr. 688. Next, the ALJ elicited testimony from a vocational expert—again, based on her reasonable interpretation of the evidence—who considered the hypotheticals and determined that a claimant of Plaintiff's age, education, work experience, and RFC could perform a number of other available cashier jobs in the national economy. Tr. 37.

The ALJ did not err in formulating Plaintiff's RFC, or at step five. Plaintiff's RFC and step five arguments merely rehash her prior arguments that the ALJ ought to have credited certain portions of the record evidence, included the limitations reflected in that evidence in the RFC, and imported those limitations into her step five analysis. *See* Pl. Br. at 19-20. Since the ALJ reasonably discounted portions of Plaintiff's symptom testimony, lay testimony, and unsupported medical opinions, the Court rejects Plaintiff's invitation to reconsider the issue. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008)(rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *see also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED: <u>    1/23/2024    </u>.


<u>*Michael W. Mosman*</u>
MICHAEL W. MOSMAN
United States District Judge